UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS M. PUELLO, JOHANNY PUELLO, and KIM PEEK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO FOODS BAKERIES DISTRIBUTION, LLC,<br><br>Defendant. | No. 17-cv-4481<br><br>**CLASS ACTION COMPLAINT** |

This is a class action brought by Plaintiffs Carlos M. Puello, Johanny Puello, and Kim Peek ("Plaintiffs") against defendant Bimbo Foods Bakeries Distribution, LLC ("BFBD") for misclassification of its current and former distributors—referred to by BFBD as "Independent Operators"—in the State of New York (the "New York Class") and the State of New Jersey (the "New Jersey Class," collectively, the "Distributors") as independent contractors.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' claims pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d). The class consists of over 100 members who are of diverse citizenship from Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

2. Venue is proper in this District because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including but not limited to Plaintiffs' employment by Defendant, the location of one or more depots where products are picked up and from where

Defendant directs Plaintiffs, and the delivery routes of Plaintiffs Carlos Puello and Johanny Puello were in this District.

## THE PARTIES

3.  Plaintiff Carlos Puello was Distributor from in or about December, 2009 until 2016. Plaintiff Carlos Puello is a citizen of the State of New York.

4.  Plaintiff Johanny Puello was a Distributor from 2012 until in or about October, 2016.  Plaintiff Johanny Puello is a citizen of the State of New York.

5.  Plaintiff Kim Peek is a Distributor and has been so for over ten years.  Plaintiff Kim Peek owns two routes that operate in New Jersey.  Plaintiff Kim Peek is a citizen of the State of New Jersey.

6.  Defendant BFBD is a Delaware limited liability company with its headquarters in Horsham, Pennsylvania.  BFBD conducts business through distribution facilities throughout the States of New York and New Jersey and across the country.

## FACTS

7.  Defendant's business consists of manufacturing, distributing, and selling baked goods under an array of well-known brands including but not limited to Thomas', Sara Lee, Arnold, Entenmann's, Bimbo, Freihofer's, and Boboli.

8.  BFBD uses hundreds of individuals within New York and New Jersey to distribute baked goods.  The Distributors pick up the baked goods from one of BFBD's depots and deliver the baked goods to various stores on their routes.

9.  Many of the distributors, including Plaintiffs, are classified as "independent operators," and paid on IRS Form 1099 as independent contractors.

10. As a result of being paid as independent contractors, the Distributors do not receive any of the benefits of employment such as fringe benefits (health insurance and paid time off), expense reimbursement (indeed, the Distributors are required to buy or use their own truck, among other things, to deliver Defendant's products), company-provided equipment, and employee protections under federal and state laws. On information and belief, this has allowed BDFD to save millions of dollars.

11. Indeed, the Distributors are essentially forced into a pay-to-work scenario, where they must spend thousands upon thousands of dollars to work for Defendant. The Distributors must buy their own trucks, pay their own insurance, purchase a $3,000 handheld computer from BFBD for each route, and pay to purchase a delivery route from Defendant.

12. Plaintiff Carlos Puello paid $226,000 to purchase his first route from BFBD in 2009, which is still being paid off even though Defendant took the route back from him. To this day, Defendant continues to operate the route, and continues to charge Plaintiff Carlos Puello for the cost of running the route, yet Plaintiff Carlos Puello receives nothing in return for his expenses.

13. Plaintiff Kim Peek paid $125,000 to purchase her routes and work for BFBD.

14. Despite classifying the Distributors are independent contractors, BFBD treats the Distributors as employees in nearly all respects.

15. BFBD exercises and has exercised substantial control over Plaintiffs and the Distributors by, among other things:

   a. Employing managers who have supervisory control over Plaintiffs and the Distributors;

   b. Requiring the Distributors to comply with its policies and procedures, including the time, place, and manner of pick-ups and deliveries;

c. Exercising control over the Distributors' method and means of obtaining results, including requiring the Distributors to set up display racks for certain products at its customers' stores, refusing to accept returns from the Distributors for damaged goods; controlling what products the Distributors distribute and unilaterally adding or removing products, frequently to the detriment of the Distributors when profitable products are discontinued; and controlling where on the supermarket shelves the products are located and refusing to permit the Distributors to negotiate product placement with the supermarkets.

d. Setting the times at which the Distributors must pick up products from BDFD's depot;

e. Requiring the Distributors to work seven days a week, including on their "off" days when they must nonetheless go to the stores on their route to check on displays and re-stock products as necessary;

f. Prohibiting Distributors from selling their routes without express consent from BFBD, which is sometimes withheld, and at other times buying the routes back at a fraction of the price for which they were sold to the Distributors and charging the Distributors for BFBD's expenses in running the route post buyback;

g. Setting the price at which BFBD's products are sold, by negotiating those prices with the supermarkets and not allowing the Distributors to negotiate the prices;

h. Dictating prioritization on the Distributors' routes, including directing the Distributors which stores to service first and setting the times at which those stores must be visited;

4

    i. Requiring the Distributors to pick up BFBD's products at the depot at or before a certain time each day;

    j. Requiring the Distributors to take on unprofitable routes, including delivering to Burger King, which benefits BFBD and harms the Distributors;

    k. Prohibiting the Distributors from addressing disputes with stores selling Defendant's products, and instead requiring that those disputes be addressed by BFBD;

    l. Negotiating shelf space at the stores to which the Distributors deliver;

    m. Dictating which products the Distributors order from Bimbo and in what quantities; and

    n. Requiring that the Distributors establish and maintain corporations in good standing for working with Bimbo.

16. The Distributors do not operate independently; rather, all of their business is obtained by and through BFBD. BFBD, by its purported sale of routes, dictates which customers the Distributors sell to and which products they sell in the contracts they require the Distributors to enter into.

17. The Distributors' work is integral to Defendant's business. If the Distributors did not deliver Defendant's products, then Defendant could not sell its products or it would have to hire employees to do the work.

18. The Distributors and Defendant are in a long-term working relationship.

19. The Distributors do not have any investment or opportunity for profit or loss in Defendant's business; instead, the Distributors work under Defendant's control and effectively pay Defendant for the privilege of delivering Defendant's products.

20. BFBD controls and unilaterally determines the Distributors' routes. The description of Plaintiffs' sales area for Route 1956, a route for the sale of Arnold products, states that "there are no additions or exceptions" to the geographical area of Plaintiffs' sales route unless those additions or exceptions are noted by Defendant.

21. The Distributors' pay is not negotiable, and the rates set for the sale of products are determined, unilaterally, by BFBD.

## CLASS ACTION ALLEGATIONS

22. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of (a) all Distributors who worked for Defendant in New York between June 13, 2011 and the date of a judgment in this action (the "New York Class") and (b) on behalf of all Distributors who worked for Defendant in New Jersey between June 13, 2011 and the date of a judgment in this action (the "New Jersey Class," referred to in conjunction with the New York Class as "the Class").

23. The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, BFBD employs over 50 Distributors at any given time and has done so throughout the Class period. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds of members in the Class who may be identified from Defendant's records.

24. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct in violation of New York State and New Jersey law that is complained of herein. Plaintiffs' claims arise from the same

practice and course of conduct that gives rise to the claims of the Class, and are based on the same or similar legal theories.

25. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a. Whether Plaintiffs and the Distributors were employees of Defendant;

b. Whether Defendant's deductions from the pay of Plaintiffs the Distributors were unlawful deductions within the meaning of the New York Labor Law (the "NYLL") and/or the New Jersey Wage and Hour Law (the "NJWHL");

c. Whether the expenses incurred by Plaintiffs and the Distributors were unlawful deductions under the NYLL and the NJWHL;

d. Whether Defendant was unjustly enriched by its conduct;

e. Whether Defendant failed to comply with New York Labor Law Section 195(3) and N.J.S.A. 12:55-2.4(h)(5); and

f. To what extent the members of the Class have sustained damages and the proper measure of damages and whether Plaintiffs and the Distributors are entitled to liquidated damages.

26. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action litigation. Neither Plaintiffs nor their counsel have interests that are contrary to or conflicting with those of the Class. Defendant has no defenses unique to Plaintiffs.

27. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Treating this as a class action will permit

a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

28. This forum is ideal for the consolidation of this litigation.  This forum has a direct connection to the subject matter of this action and many of the events giving rise to this action took place in or emanated from this County.

29. Prosecuting separate or individual actions would unnecessarily tax the Court's resources, as well as those of Defendant and individual Class members.

30. Without a class action, Defendant will likely retain the benefit of its wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the members of the Class.

31. A class action is ideal because current and former employees are likely to fear retaliation by Defendant.

### **COUNT I**
### **Unlawful Deductions in Violation of New York Labor Law Section 193**
### **(On Behalf of the New York Class)**

32. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

33. Plaintiffs and the Distributors were, at all times, employees of Defendant.  Plaintiffs and the Distributors were, at all times, employed under the exclusive direction and control of Defendant not only as to the result to be accomplished by their work, but also as to the manner and

means by which that result was accomplished, and, as such, are entitled to the rights and benefits of an employee, including the protections of the New York Labor Law.

34. New York Labor Law Section 193 prohibits deductions from employees' wages unless the deductions are (1) expressly authorized by and "for the benefit of the employee" and (2) are limited to the enumerated categories of permissible deductions listed in NYLL §193.

35. Defendant made deductions, from the pay of Plaintiffs and the Distributors, that were not for the benefit of Plaintiffs and the Distributors and were not limited to the enumerated categories of permissible deductions listed in NYLL §193. Those deductions include, without limitation, deductions for the cost of "purchasing" a route, for the cost of equipment required to work for Defendant, for returns Defendant refused to take, and indirect deductions resulting from Defendant's failure to pay the employer's share of FICA taxes and Defendants' failure to reimburse Plaintiffs and the Class for, among other things, mileage in connection with their work for Defendant.

36. The indirect deductions made from Distributors' pay violate NYLL §193's command that no employer may require an employee to make any payment by a separate transaction unless such a payment would be a permissible deduction under NYLL §193.

37. Plaintiffs and the Distributors have been harmed by Defendants' unlawful deductions.

## COUNT II
## Common Law Misclassification
## (On Behalf of the New York Class)

38. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

39. Plaintiffs and the Distributors were, at all times, employees of Defendant who were misclassified as independent contractors. Plaintiffs and the Distributors were, at all times, employed under the exclusive direction and control of Defendant not only as to the result to be accomplished by their work, but also as to the manner and means by which that result was accomplished, and, as such, are entitled to the rights and benefits of an employee, including the protections of the New York Labor Law.

40. Defendant violated the New York State common law test by subjecting Plaintiffs and the Distributors to misclassification at all relevant times.

41. In addition, Defendant misclassified the Class as independent contractors in violation of the New York State Commercial Goods Transportation Industry Fair Play Act, NYLL §862-b, which became effective on April 10, 2014. Plaintiffs and the Class are employees, and not independent contractors, because, among other things:

   a. Plaintiffs and the Class are not free from the control of Defendant in performing their jobs;

   b. Plaintiffs and the Class perform services for Defendant that are within Defendant's usual course of business; and

   c. Plaintiffs and the Class are not customarily engaged in an independently established trade, occupation, profession, or business that is similar to the service at issue;

42. Plaintiffs and the Distributors have been harmed by Defendant's misclassification.

### COUNT III
### Unjust Enrichment
### (On Behalf of the New York Class)

43. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

44. Defendant has been financially enriched by subjecting Plaintiffs and the Distributors to deductions, charges, and/or expenses that are typically borne by employers.

45. The financial enrichment enjoyed by Defendant has come at the expense of Plaintiffs and the Distributors, all of whom have borne the improper deductions, charges, and/or expenses.

46. It is against equity and good conscience to permit Defendant to retain such improper deductions, charges, and/or expenses.

47. Defendant should be required to reimburse Plaintiffs and the Distributors for such improper deductions, charges, and/or expenses.

## COUNT IV
### Violation of New York Labor Law Section 195(3)
**(On Behalf of the New York Class)**

48. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

49. New York Labor Law Section 195(3) requires an employer to send a statement itemizing, among other things, deductions made from an employee's pay.

50. Defendants failed to provide that statement to the Distributors and/or provided an incomplete statement to the Distributors because the statement did not include all deductions that were being made from the Distributors' pay.

51. Pursuant to New York Labor Law Section 198-d, Plaintiffs and the Class are entitled to a maximum of $2,500 each plus costs and reasonable attorneys' fees for this violation.

## COUNT V
### Unlawful Deductions in Violation of NJWHL
### (On Behalf of the New Jersey Class)

52. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

53. Defendant is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-4.1(a).

54. Plaintiff Kim Peek and each member of the New Jersey Class is an employee within the meaning of N.J.S.A. 34:11-4.1(b).

55. Defendant has paid wages to the New Jersey Class within the meaning of N.J.S.A. 34:11-4.1(c).

56. As alleged above, Defendant has made improper deductions from the wages of the New Jersey Class, and/or caused the members of the New Jersey Class to cover expenses which are actually deductions from their wages in the form of indirect deductions.

57. Defendant's deductions violated N.J.S.A. 34:11-4.4 *et seq.*

58. Any agreement between Defendant and the New Jersey Class which permits the unlawful deduction of wages is null and void, pursuant to N.J.S.A. 34:11-4.7.

## COUNT VI
### Unjust Enrichment
### (On Behalf of the New Jersey Class)

59. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

60. Defendant has been financially enriched by subjecting Plaintiffs and the Distributors to deductions, charges, and/or expenses that are typically borne by employers.

61.     The financial enrichment enjoyed by Defendant has come at the expense of Plaintiffs and the Distributors, all of whom have borne the improper deductions, charges, and/or expenses.

62.     It is against equity and good conscience to permit Defendant to retain such improper deductions, charges, and/or expenses.

63.     Defendant should be required to reimburse Plaintiffs and the Distributors for such improper deductions, charges, and/or expenses.

**COUNT VII**
**Violation of N.J.S.A. 12:55-2.4(h)(5)**
**(On Behalf of the New Jersey Class)**

64.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

65.     N.J.S.A. 12:55-2.4(h)(5) requires an employer to send a statement itemizing, among other things, deductions made from an employee's pay.

66.     Defendants failed to provide that statement to the Distributors and/or provided an incomplete statement to the Distributors because the statement did not include all deductions that were being made from the Distributors' pay.

**WHEREFORE**, plaintiffs pray for relief and judgment, as follows:

A.      For an order certifying this action as a class action, appointing Plaintiffs as Class Representatives and appointing Plaintiffs' attorneys as Class Counsel;

B.      For all damages on all applicable claims, including reimbursement of all charges, deductions, and expenses, liquidated damages and interest, and statutory damages, in an amount to be proven at trial;

C. For an order permanently enjoining Defendant from engaging in the unlawful practices alleged herein;

D. For an award of attorneys' fees, costs and expenses; and

E. For such other and further relief that the Court deems appropriate and just under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED: June 14, 2017                **GARDY & NOTIS, LLP**

By: *s/Orin Kurtz*
Mark C. Gardy
Orin Kurtz
Jacob E. Lewin
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel: (212) 905-0509
Fax: (212) 905-0508
mgardy@gardylaw.com
okurtz@gardylaw.com

*Attorneys for Plaintiff*